# Shriner *v.* Craft.

## *Breach of Contract.*

(Decided Dec. 16, 1910.    Rehearing denied Feb. 26, 1910.
51 South. 884.)

1. *Parties; Amendment; Striking Parties.*—Where the impropriety of making one a party is called to the court's attention by demurrer, or appears from the evidence the striking out of such party does not work a discontinuance of the cause.    (Section 5367, Code 1907.)

2. *Contracts; Construction; Parties.*—Where the contract expressly stated that it was between. two named parties, the fact that another's name appeared at the end of the contract with that of one of the parties did not make such other a party to the contract.

3. *Same; Modification; Parol.*—A written contract may be modified by the mutual parol agreement of the parties thereto.

4. *Same; Consideration; Necessity.*—Where each party agrees to rescind the contract so that each surrenders some provision inserted for his benefit, mutuality of assent is complete, and any new contract then made by the parties will be supported by a consideration; but where one party refuses to do the work required by his contract or threatens to abandon it unless paid more than is provided thereby, a promise by the other to pay more than the contract price, if made while the original contract is in force, is without consideration and unenforceable.

5. *Same; Plea; Consideration.*—In an action for breach of a contract to build, a plea alleging breach of plaintiff's agreement to have an ordinance passed to take the lots on which the contractor is. to build out of the fire limits in time to enable the contractor to begin work when required by the contract, in that the ordinance was not passed until two weeks after the contractor was to begin the work under the contract, the contract not fixing the time when the work was to be commenced, was demurrable for not showing whether the agreement to have the ordinance passed was made at or after the original contract was executed and if made thereafter, whether there was any consideration for it, and for other reasons.

6. *Same; Evidence.*—Where the contract provided that the expenses incurred by the owner and damages resulting from the contractor's default should be audited and certified by the architect and that the certificate of the architect should be conclusive upon the parties, such certificate of the architect was admissible in evidence in an action by the owner for breach of the contract by abandonment.

7. *Same; Architect's Certificate; Conclusiveness.*—Where the building contract provides that the certificate of the architect shall be conclusive as to the expenses incurred by the owner and the damages resulting from the contract's default, in the absence of fraud

or gross mistake indicating bad faith or failure, to exercise an honest judgment in making out the certificate, the certificate is conclusive thereon.

APPEAL from Mobile Circuit Court.

Heard before Hon. SAMUEL B. BROWNE.

Action by John Craft against William A. Shriner. From a judgment for plaintiff, defendant appeals. Affirmed.

It appears from the record that Mary R. Shriner attached her signature to the contract, and was originally sued; but the complaint was afterwards amended upon her demurrer and motion, so as to strike her as a party defendant, whereupon the other defendant moved for a discontinuance because of the striking out of the party defendant. The other errors complained of are the sustaining of appellee's demurrer to the second and third pleas of defendant; and they are as follows:

"(2) That, subsequently to the making of said contract set out in the complaint, the plaintiff and the defendant modified said contract by mutual agreement, in this: The defendant requested the plaintiff in substance as follows: At the end of each week during the time that defendant should be at work on said contract on said building to advance a sufficient amount to satisfy the laborers on said building, and the plaintiff agreed with the defendant to so advance at the end of eacn week a sufficient amount to pay the laborers that work on said building.

"(3) And for further answer to said complaint the said William A. Shriner alleges that, after he entered into a contract with the plaintiff, it was agreed between him and the plaintiff that the plaintiff should furnish at the end of each week the money necessary to pay the men employed by the defendant in the erection of said houses; and said defendant alleges that the plaintiff

breached such agreement, in that he failed to furnish at the end of each week the money necessary to pay the laborers the defendant had employed in erecting said houses; and the defendant avers that such breach of the agreement by the plaintiff occurred before he (the defendant) abandoned the contract."

The demurrers were: To the second plea, that it does not appear that plaintiff failed to comply with his promise to advance; and that it does not appear that there was any consideration for the promise to advance; and no justification is shown on the part of the defendant for his breach of the contract. To plea 3, because it does not appear that plaintiff elected to rescind such contract on account of the alleged breach; or that defendant's promise was dependent on plaintiff's promise to advance; and also no consideration.

The other pleas set up the same matter in an amplified form and with more particularity, except the ninth, which is as follows:

"(9) The defendant, as a defense to the action of the plaintiff, saith that at the time the said action was commenced the plaintiff was indebted to him in the sum of $250 damages, arising in connection with the contract described in the complaint, in this: That the buildings provided for to be erected under the contract described in the complaint were to be built upon lots of land lying within what are known as the 'fire limits' of the city of Mobile, within which limits it was unlawful to erect frame buildings, such as was provided in the contract described in the complaint should be erected on said lot, and the plaintiff agreed with the defendant that, because he was a member of the general council of the city of Mobile, he would have an ordinance passed by the general council of the city of Mobile excepting these lots from the provisions of said ordi-

nance and permitting defendant to erect frame buildings on said lot, and that he would do this sufficiently in advance of the commencement of the contract to enable the defendant to begin the erection of buildings upon the day prescribed by the terms of the contract; but defendant says that plaintiff negligently failed to secure the passage of such ordinance as would exempt the buildings to be erected under the contract, from the provisions of law establishing the fire limits of the city of Mobile, until two weeks had elapsed after the time defendant was required to commence constructing said building under the terms of the contract, and the defendant says that by the said delay of the plaintiff he was damaged in the sum of $250, which he hereby offers to set off against the demand of the plaintiff, and he claims judgment for the excess."

Demurrers to this plea were that the agreement alleged is void for uncertainty and because it, does not set out the time when the alleged agreement was made. The other facts sufficiently appear in the opinion, with the exception that the suit was upon the breach of the contract made by Shriner to construct certain buildings for Craft, and which contract seems to have been abandoned by Shriner.

FREDERICK G. BROMBERG, for appellant. A contract may be made which is partly in writing and partly oral. *Murphy v. Farley,* 124 Ala. 279; *Moore v. Seaboard,* 161 Fed. 99; *Dannat v. Fuller,* 22 N. E. 815; 2 Mayf., secs. 43 and 601. Parties may change or modify their contracts in writing at their pleasure without new consideration when such contract is not required by the statute of frauds to be in writing.—*Prestwood v. Eldridge,* 19 Ala. 72; *Badders v. Davis,* 88 Ala. 267; *Gurthrie v. Campbell,* 70 N. Y. 486; 5 Cur. Law, p. 462;

2 Mayf. p. 298. Further in support of both propositions counsel cite.—9 Cur. Law, pp. 421 and 431; 102 N. Y. Supp. 874, 112 N. W. 1003; 101 N. Y. Supp. 351; 105 Ib. 70; 143 Fed. 929.

GREGORY L. & H. T. SMITH, for appellee. The fact that there was an improper party as defendant was brought to the attention of the court by demurrer and the striking of such party did not amount to a discontinuance.—*Jones v. Nelson,* 51 Ala. 471; *Masterson v. Gibson,* 56 Ala. 56; *Reynolds v. Simpkins,* 67 Ala. 378; *Jones v. Engelhardt,* 78 Ala. 505; *Englehardt v. Clanton,* 83 Ala. 336; *Crossthwaite v. Pitts,* 139 Ala. 421. The court properly sustained demurrers to the plea.—*Burkham v. Mastin,* 54 Ala. 127. The party against whom a contract is violated has the option either to rescind the contract on account of the breach, or to waive the right to rescind, and sue for damages suffered by reason of the breach committed, holding the other party to a continued performance of the contract.—*Powell v. Sammons,* 31 Ala. 552; *Straus v. Mertief,* 64 Ala. 299; *Holloway v. Talbot,* 70 Ala. 389; *Marks v. Miller,* 134 Ala. 347. In any event the pleas were filed after the time of filing had expired, and it was optional with the court whether it would allow them to be filed. —*Reid L. Co. v. Lewis,* 94 Ala. 626; *Watson v. Herring,* 115 Ala. 272. Parties may relegate to the architect the right to fix damage.—6 Cyc. 13; 63 Pac. 833; 39 N. E. 394; 56 Am .St. Rep. 314; 175 U. S. 602; 114 U. S. 549.

SIMPSON, J.—This is an action by the appellee against the appellant, for damages for the breach of a contract, by which the defendant undertook and agreed to furnish material and build two houses in accordance with the contract set out in the record.

[Shriner v. Craft.]

The first assignments of error insisted on (numbered 1 and 2) are to the sutaining of the demurrer of Mary R. Shriner, on the ground that the complaint shows on its face that Mary R. Shriner was not a party to the contract sued on, and the third, fourth, and fifth assignments relate to the same subject, to wit, to the refusal of the court to grant the motion for a discontinuance of the case, because of the amendment of the complaint, by striking out the name of said Mary R. Shriner.

There was no error in either action of the court. The contract sued on is set out in the complaint, and it states distinctly that it is between W. A. Shriner and John Craft. The fact that Mary R. Shriner's name appears at the end of the contract with W. A. Shriner does not make it her contract. The statute is clear on the right of amendment by striking out parties, and our decisions are uniform to the effect that the striking out of an improper party does not work a discontinuance of the case. It cannot be material how the fact comes to the knowledge of the court that such person is an improper party; whether it appears upon the face of the pleading, and is brought to the attention of the court, by demurrer or is subsequently made to appear in the evidence. Section 5367, Code of 1907, and cases cited.

A number of the assignments of error are grouped by the appellant in his brief, being questions raised on sustaining motions to strike and demurrers to pleas, which set up a modification of the contract. The first proposition is correct, to wit, that the parties to a written contract may, by mutual parol agreement, modify the contract; but the second proposition, to wit, that said modification is binding without any new consideration, is not so clear. While there are some expressions in the cases which seem to dispense with the necessity of

a consideration to a modification of a contract, yet a modification can be nothing but a new contract, and must be supported by a consideration like every other contract. An analysis of the cases shows that it would be more accurate to say that the mutual obligations assumed by the parties, at the time of the modification, constitute a sufficient consideration, and if one of the parties does not assume any obligation or release any right, then a promise by the other is a nudum pactum and void.

Where a teacher, who had been employed at an annual salary, agreed to give up his definite contract and to serve during the pleasure of the board, it was held that the change in the terms of the teachers' service, furnished a sufficient consideration for the promise of increased compensation.—*Hildreth v. Pinkerton Academy*, 29 N. H. 227, 235.

Where an agreement to do blasting on certain terms was made upon the representations of the defendant as to the quality of the rock to be blasted, and it was found that the rock was much harder, and useless to the party blasting, in place of being useful, as represented, a new agreement to pay more for the work was supported by the additional work which the other party agreed to perform.—*Osborne v. O'Reilly*, 42 N. J. Eq. 468, 475, 9 Atl. 209.

There is a class of cases, in which the original contract had been abandoned, and the parties afterwards entered into a new parol contract for the performance of the same work on different terms, and the contract was held to be valid. The theory of these cases seems to be that either party may abandon the contract and subject himself to the penalty or liability therefor, and then the parties are at liberty, to make another contract, in which the original work, stipulated for in the

[Shriner v. Craft.]

first contract, may be a sufficient consideration for the second, leaving the parties to their remedies on a⸱ count of the abandonment of the first contract, unless special provision be made to release the same.—*Munroe v. Perkins,* 9 Pick. (Mass.) 298, 20 Am. Dec. 475, 478; *Coyner v. Lynde,* 10 Ind. 282, 284; *Morrison v. Heath,* 11 Vt. 610; *Koerper v. Royal Inv. Co.,* 102 Mo. App. 543, 551, 77 S. W. 307.

Other cases have gone a step further, and have held that, if one party finds himself in such a position that he cannot carry out the contract on the terms provided, and notifies the other party that he will abandon the contract unless different terms are granted, said second party has the option either to let the contract be abandoned, and depend on his action for damages, or to make the new agreement, the consideration being that he considers it worth more to him to have the benefits of the new agreement, than to recover his damages for the breach of the original contract.—*Bishop v. Busse et al.,* 69 Ill. 403, 407.

It seems to this court that this latter class of cases has reached a dangerous limit in permitting one party to be bound by his promise to another, who has promised nothing but what he was already under contract obligation to perform, which is no consideration at all. —*Koerper v. Royal Inv. Co.,* 102 Mo. App. 543, 550, 77 S. W. 307; *Widiman v. Brown,* 83 Mich. 241, 244, 47 N. W. 231; *Davis v. Morgan,* 117 Ga. 504, 506, 43 S. E. 732, 61 L. R. A. 148, 97 Am. St. Rep. 171; *Willingham Sash & Door Co. v. Drew,* 117 Ga. 850, 4 5S. E. 237.

Where, upon the mere statement of the defendant that the drilling of the well would be very expensive, plaintiffs agreed to reduce the price of drilling, it was held no modification of the contract (*Wendling v. Snyder et al.,* 30 Ind. App. 330, 333, 65 N. E. 1041, 1042), the court saying: "The evidence did not tend to prove

an abandonment or modification of the original con-
tract" and that the work was done under the new con-
tract.

· In our early case of *Young v. Fuller*, 29 Ala. 464, no
question was raised about consideration, the only ques-
tion being that the parties might, by a subsequent writ-
ten contract, guarantee the genuineness of a note which
had been indorsed by one to the other, by providing
that if the note turned out to be void, the transaction
was, in effect, to be canceled.

In the case of *Thomason v. Dill*, 30 Ala. 444, 459, T.
had purchased a slave from D., taken a bill of sale, and
given his promissory note, but left the slave with D.
until he (T.) went to procure sureties, and the court
held that if the promise of T. to procure the surety was
after the consummation of the contract, in pursuance
merely of a prior unaccepted offer, it was nudum pac-
tum, but if the parties mutually agreed to modify the
contract, T.'s right to the slave not to attach until he
executed the proposed note, the promise of each is sup-
ported by a sufficient consideration. See same case, 34
Ala. 175, 270, 271.

In the case of *Johnson's Adm'r v. Sellers*, 33 Ala. 265,
the defendant had entered into a contract to take charge
of a school, and there being a dispute as to whether he
was bound, under the original contract, to bring his
wife to the school as a teacher, it was agreed to pay him
an additional amount to bring her. The court held that
the defendant could not refuse to perform his contract
and make that a sufficient consideration for a promise
of payment of a sum to induce him to perform his con-
tract, though one party might waive the performance of
the contract and the two agree to rescind or modify the
contract and engraft new provisions on it, but that,

while the original contract was subsisting, a promise to prevent its breach was without consideration.

In the case of *Burkham v. Mastin*, 54 Ala. 122, 125, 126, 127, emphasis is placed on the fact that the part payment made at the time of the additional contract, was before anything was due, thus furnishing a consideration for the modification, and the court held that, in that phase of the case, the modification was supported by a consideration, but "if such agreement is made only to induce a performance, or to prevent a breach of the original contract, it would be without consideration, and could not be supported.".

In the case of *Hall & Long v. Jones*, 56 Ala. 493, 497, where the question was whether the assumption of the debt of the old firm by the new one discharged the old one, this court, speaking through Stone, J., said: "It requires the same mutuality to vary or modify a contract, as it does to create it in the first instance; for the modification is only a species of contract. The mutual agreement of the parties, a promise for a promise, is sufficient to uphold such modified contract, without other new consideration."

In the case of *Cooper v. McIlwain*, 58 Ala. 296, 300, the original contract was expressly rescinded and a new written contract made, and on these facts the court says that the parties "may rescind or modify it, at pleasure; and their mutual assent is all that is necessary to support the modification or rescission."

In the case of *Robinson v. Bullock*, 66 Ala. 548, 554, the question at issue was whether, by a subsequent agreement, one party was substituted for another who was to furnish the saw logs (which necessarily involved the mutual promise to release the first, and that the second would perform the work), this court properly said that "no other consideration is necessary to sup-

port such agreement than the mutual assent of the parties."

The case of *Badders & Britt v. Davis*, 88 Ala. 367, 6 South. 834, involved the substitution of certain work for others named in the specifications, which of course involved the mutual agreements to release the original items, on one side, and to perform the new work, on the other.

In the case of *Clark & Wadsworth v. Jones*, 85 Ala. 127, 132, 4 South. 771, the consideration for the new promise was the surrender of the contract, and leaving funds in the hands of the defendant to pay the claims assumed, and the court said: "An agreement made to prevent the breach of a contract, or, after a breach, to assume and pay the liabilities of the contractor without other consideration than the mere agreement to rescind, is nudum pactum."

The theory of *Cornish et al. v. Suydam*, 99 Ala. 620, 13 South. 118, is that the new contract was a rescission of the old contract, and the substitution of the new one for it.

In the case of *Pioneer Savings & Loan Co. v. Nonnemacher*, 127 Ala. 521, 547, 30 South. 79, the consideration for the agreement to change the date of maturity of the shareholders' stock was that he was released from liability for extra assessments provided for in the original subscription, and the court properly said that the mutual assent of the parties was all that was necessary.

It is manifest that, in order for there to be a mutual assent, there must be something to be assented and agreed to on each side. Where the parties agree to rescind the contract, each one gives up the provisions for his benefit, the mutual assent is complete, and the parties are then competent to make any new contract that may suit them. Where one piece of work is substituted

for another, the contractor is released from doing one, in consideration that he will do the other. But where one party refuses to do the work, which his contract requires him to do, or even threatens to abandon the work, unless he is paid more, and the other promises to pay more, the original contract still remaining subsisting, we consider it merely a promise to pay for what he was already obliged to do, and a nudum pactum; consequently there was no error in sustaining demurrers and striking pleas, as set out in assignments Nos. 6 to 16, inclusive.

There was no error in sustaining the demurrer to the ninth plea. Said plea alleges that the ordinance in question was not passed until two weeks after the time when defendant was to commence work on the houses according to the contract, and the contract is set out in the complaint, and does not fix any time when work was to be commenced. Moreover, the plea does not show whether the agreement to have the ordinance passed was made at the time of the original contract or after, nor whether there was any consideration for it. It does not set up any supposed invalidity in the agreement.

There was no error in admitting the certificate of the architect. The contract (section 5) particularly provided for the certificate and authorized the plaintiff to act on it. The admission of the paper does not necessarily make it conclusive evidence of the facts recited. That matter could be brought up by the offer to controvert it.

The certificate of the architect (Exhibit E) is also provided for by section 5 of the contract and was therefore admissible. The certificate states that the architect had audited the expense incurred, etc., in accordance with the provisions of the contract. The exception to the introduction of this certificate did not suggest that there had been anything wrong about the manner in

[Shriner v. Craft.]

which the expense account was audited, but merely that it was "not accompanied by the papers required by article 5 of the contract." Said article does not require such certificate to be accompanied by any papers.

Article 5 of the contract provides that the certificate of the architect as to the expenses incurred by the owner and the damages incurred through default "shall be audited and certified by the architect, whose certificate thereof shall be conclusive upon the parties." The architect's certificate was made out in accordance with the contract and certified that the amount due plaintiff is $1,035.34, and the court, on request of the plaintiff, instructed the jury if they believed the evidence to find for the plaintiff for that amount.

Where a building contract specially provides that the certificate of the architect shall be final and conclusive, it is conclusive and binding in its legal operation and effect on the parties to the contract, and can be impeached only for fraud, or such gross mistakes as would imply bad faith or a failure to exercise an honest judgment.—6 Cyc. pp. 40-45, and notes; *Tally v. Parsons*, 131 Cal. 516, 63 ac. 833; *Charlton v. Scoville*, 144 N. Y. 691, 39 N. E. 394; *Baltimore, O. & C. Ry. Co. v. Scholes*, 14 Ind. App. 524, 43 N. E. 156, 56 Am. St. Rep. 314; *U. S. v. Gleason*, 175 U. S. 602, 20 Sup. Ct. 228, 44 L. Ed. 284; *Martinsburg v. March*, 114 U. S. 549, 9 Sup. Ct. 1035, 2 9L. Ed. 255.

There was no error in giving said general charge, and, that being the case, it is unnecessary to discuss other charges and points on evidence raising the same question.

The judgment of the court is affirmed.

Affirmed.

DOWDELL, C. J., and MCCLELLAN and MAYFIELD, JJ., concur.