TRAVELERS INSURANCE COMPANY V. ANDREW J. SNOWDEN.

45  249
s60  265

FILED MAY 22, 1895.    No. 5696.

Insurance: ACCIDENT POLICY: VALIDITY OF EXCEPTION CLAUSE: INSTRUCTIONS. An insurance company issued a policy describing the occupation of the insured as "cattle dealer, or broker and shipper, not tender or drover, not on ranch or farm." Among the provisions of the policy was one to the effect that the insurance did not cover injuries resulting "from any of the following causes, or while so engaged or affected: * * * Violating law; violating rules of a corporation; * * * voluntary exposure to unnecessary danger; entering or trying to enter or leave a moving conveyance using steam as a motive power; riding in or on any such conveyance not provided for the transportation of passengers; walking or being on a railway bridge or road-bed. (Railway employes excepted.)" The answer set up that the injuries were within the exceptions of the policy. The court refused to instruct the jury that the plaintiff could not recover for injuries so sustained, while entering or trying to enter a moving conveyance using steam as a motive power, or if he received the injury while riding in or upon such conveyance not provided for the transportation of passengers. There was evidence tending to show that the injuries were sustained under such circumstances. *Held*, (1) That it was competent for the parties to contract that the insurance should not extend to injuries so received; (2) that it was error to refuse the instructions

referred to; (3) that on this branch of the case there was no issue of negligence involved, the question being whether the injuries were within the contract of the parties, not whether the plaintiff was conducting himself in a prudent manner when they were sustained.

ERROR from the district court of Buffalo county. Tried below before HAMER, J.

The facts are stated by the commissioner.

*Charles Offutt* and *Charles S. Lobingier*, for plaintiff in error:

The exception clauses relied upon are not only valid but commendable. They are enforceable under the general principle of the law of contracts. (2 Parsons, Contracts, 494*, 500*, 505*; *Robertson v. French*, 4 East [Eng], 135; *Universal Life Ins. Co. v. Devore*, 83 Va., 267; *Schuylkill Navigation Co. v. Moore*, 2 Whart. [Pa.], 491; May, Insurance [2d ed.], sec. 172; *Shader v. Railway Passenger Assurance Co.*, 66 N. Y., 441; *Standard Life & Accident Ins. Co. v. Jones*, 10 So. Rep. [Ala.], 530.)

Particularly the courts have enforced the clauses which except death from the " violation of law " (*Duran v. Standard Life & Accident Ins. Co.*, 22 Atl. Rep. [Vt.], 530; *New York Accident Ins. Co. v. Clayton*, 59 Fed. Rep., 559—both violations of Sunday law—*Travelers Ins. Co. of Hartford v. Seaver*, 19 Wall. [U. S.], 531), "voluntary exposure to unnecessary danger" (*Travelers Ins. Co. v. Jones*, 17 Ins. L. J. [Ga.], 784; *Hull v. Equitable Accident Association*, 42 N. W. Rep. [Minn.], 936; *Tuttle v. Travelers Ins. Co.*, 134 Mass., 175; *Sautelle v. Railway Passenger Assurance Co.*, 18 Ins. L. J. [N. Y.], 892; *Morel v. Mississippi Valley Life Ins. Co.*, 4 Bush [Ky.], 535; *Hill v. Travelers Ins. Co.*, 17 Can. L. J., 44; *Wright v. Sun Mutual Life Ins. Co.*, 29 U. C. C. P., 221), " entering or trying to enter a moving conveyance " (*Miller v. Travel-*

*ers Ins. Co.*, 39 Minn., 548), and "violating the rules of a corporation" (*Bon v. Railway Passenger Assurance Co.*, 56 Ia., 664).

The court erred in its instructions in substituting the tests of negligence for the terms of the contract which excepted voluntary exposure. (*Hull v. Equitable Accident Association*, 42 N. W. Rep. [Minn.], 936 ; *Miller v. Travelers Ins. Co.*, 39 Minn., 548; *Damont v. New Orleans & C. R. Co.*, 9 La. Ann., 441.)

*H. M. Sinclair, contra*, cited : *Marx v. Travelers Ins. Co.*, 39 Fed. Rep., 321; *Burkhard v. Travelers Ins. Co.*, 102 Pa. St., 262; *Freeman v. Travelers Ins. Co.*, 144 Mass., 572; *Tucker v. Mutual Benefit Life Ins. Co.*, 50 Hun [N. Y.], 50; *Scheiderer v. Travelers Ins. Co.*, 58 Wis., 13; *Cotton v. Fidelity & Casualty Co.*, 41 Fed. Rep., 506; *Tooley v. Railway Passenger Assurance Co.*, 2 Ins. L. J. [Ill.], 275; *Bizzell v. Booker*, 16 Ark., 308; *Baltimore & P. R. Co. v. Jones*, 95 U. S., 439; *Wabash, St. L. & P. R. Co. v. Locke*, 112 Ind., 404; *Philadelphia, W. & B. R. Co. v. Stinger*, 78 Pa. St., 225; *Milwaukee & St. P. R. Co. v. Arms*, 91 U. S., 494; *Karr v. Parks*, 40 Cal., 188; *Moore v. Central Railroad of Iowa*, 47 Ia., 688; *Frandsen v. Chicago, R. I. & P. R. Co.*, 36 Ia., 372; *Lowery v. Manhattan R. Co.*, 99 N. Y., 158; *Matson v. Maupin*, 75 Ala., 312; *Richmond & D. R. Co. v. Howard*, 79 Ga., 44; *Chicago & E. I. R. Co. v. Hedges*, 105 Ind., 398; *Briggs v. Union Street R. Co.*, 148 Mass., 72; *Brown v. Congress & B. S. R. Co.*, 49 Mich., 153; *Kay v. Pennsylvania R. Co.*, 65 Pa. St., 269; *Durant v. Palmer*, 29 N. J. Law, 546; *Gravell v. Minneapolis & St. L. R. Co.*, 11 Fed. Rep., 569; *Hoag v. Lake Shore & M. S. R. Co.*, 85 Pa. St., 293; *Milwaukee & St. P. R. Co. v. Kellogg*, 94 U. S., 469; *Doggett v. Richmond & D. R. Co.*, 78 N. Car., 305; *Allen v. St. Louis Ins. Co.*, 85 N. Y., 473; *Wilson v. Conway Fire Ins. Co.*, 4 R. I., 156; *Bartlett v. Union Mutual Fire*

*Ins. Co.*, 46 Me., 500; *Bowman v. Pacific Ins. Co.*, 27 Mo., 152; *Phœnix Ins. Co. v. Slaughter*, 12 Wall. [U. S.], 404; *North American Life & Accident Ins. Co. v. Burroughs*, 69 Pa. St., 43; *National Benefit Association v. Jackson*, 114 Ill., 533; *Griffin v. Western Mutual Benevolent Association*, 20 Neb., 620; *Phœnix Ins. Co. v. Barnd*, 16 Neb., 90; *Bloom v. Franklin Life Ins. Co.*, 97 Ind., 478; *Cluff v. Mutual Benefit Ins. Co.*, 13 Allen [Mass.], 308, 99 Mass., 317; *Bradley v. Mutual Benefit Life Ins. Co.*, 45 N. Y., 422; *Murray v. New York Life Ins. Co.*, 96 N. Y., 614; *Travelers. Ins. Co. v. Seaver*, 19 Wall. [U. S.], 531; *Kerr v. Minnesota Mutual Benefit Association*, 39 Minn., 174; *Harper v. Phœnix Ins. Co.*, 18 Mo., 109, 19 Mo., 506.

IRVINE, C.

This was a suit on a policy of accident insurance, and resulted in a judgment in favor of the plaintiff, from which the defendant insurance company prosecutes error.

The policy sued upon insured Snowden against loss of time, not exceeding twenty-six consecutive weeks, resulting from bodily injuries, effected through external, violent, and accidental means, with a provision that if the loss of one entire hand or foot should result from such injuries alone within ninety days, the insurer would pay one-third of the principal sum, such sum being $5,000. The policy designated Snowden's classification as "preferred (being a cattle dealer or broker and shipper, not tender or drover, not on ranch or farm, by occupation)." The insuring clause of the policy began, " does hereby insure, subject to conditions on back hereof." On the back of the policy, under the heading "Agreements and conditions under which this policy is issued and accepted," was the following:

" 4. This insurance does not cover  *  *  *  accident, nor death, nor loss of limb or of sight, nor disability resulting wholly or partly, directly or indirectly, from any

of the following causes, or while so engaged or affected:
* * * Violating law; violating rules of a corpora-
tion; * * * voluntary exposure to unnecessary dan-
ger; entering or trying to enter or leave a moving con-
veyance using steam as a motive power; riding in or on
any such conveyance not provided for the transportation of
passengers; walking or being on a railway bridge or road-
bed. (Railway employes excepted.)"

The answer of the insurance company alleged that the
accident had been incurred under circumstances within the
exceptions which we have quoted. The reply was a gen-
eral denial.

The evidence tended to show that the insured was on his
way from Cushing to Omaha, accompanying twelve car-
loads of cattle belonging to him, which he was bringing to
market. The train was a long one and the cars containing
his cattle were near the front end of the train. A stop
was made for the purpose of taking water, at Seward, late
on Sunday night. Snowden took advantage of this stop
to alight from the caboose and go forward to examine his
stock. He carried with him what is designated a "prod-
pole," about five feet long and an inch and a half in di-
ameter. He found a steer off its feet in a car about the
fourth or fifth from the front of the train, and was endeav-
oring to get the steer on its feet by means of the prod-pole
when the engine gave the signal to start. Snowden climbed
upon the car. The train moved forward a very short dis-
tance and stopped again. Snowden dismounted and re-
newed his effort to get the steer on its feet. While so en-
gaged another signal to start was given. Here the testimony
becomes conflicting. Snowden testifies that he at once
proceeded to climb upon the car by means of the ladder or
steps on the side thereof, and that when he had almost
reached the top of the car, the sudden movement of the
train in starting wrenched him from the ladder and threw
him upon the track, the wheels passing over one hand in

such a way as to necessitate immediate amputation. Several witnesses, both train hands and passengers, testify that immediately after the accident Snowden stated that the train had started and was gaining such headway that he feared that he would not be able to jump upon the caboose as it passed, and that he therefore endeavored to jump upon one of the stock cars as it passed him, and was thrown upon the track while making the attempt. On this state of the evidence the court gave the following instructions, and no others:

"1. Before the plaintiff can recover he must establish his case by a preponderance of evidence.

"2. If the plaintiff recover, he can only recover one third of five thousand dollars, and interest thereon at seven per cent from the time he notified the company of his injury, if he did so notify them.

"3. The plaintiff as a shipper had a right to attend the cattle which were being shipped, and if he was injured while engaged in so caring for the cattle, his loss is within the risk taken by the insurance company; provided he acted with the prudence of a man of ordinary intelligence and prudence, placed in like circumstances."

The defendant requested and the court refused to give, among others, an instruction to the effect that if Snowden received the injury while he was voluntarily exposing himself to unnecessary danger, he could not recover; another to the effect that if he received the injury while he was entering or getting upon, or trying to enter or get upon, a moving conveyance, using steam as a motive power, he could not recover; and still another, to the effect that if he received the injury while riding in or upon a moving conveyance using steam as a motive power, and which was not provided for the transportation of passengers, he could not recover. We entertain no doubt that it was entirely competent for the parties to contract for insurance not extending to the excepted risks. The company might have

insured Snowden against all manner of injuries.    It might, if the parties had so desired, have insured him against a single kind of injury; for instance, if the contract provided that the company insured him only against injuries resulting from strokes of lightning, it could not possibly be claimed that the company would be liable for the injury here proved.    Between these limits the parties might contract as they saw fit, and having contracted without ambiguity that the company should not be liable for injuries sustained while the insured was entering or trying to enter a moving conveyance using steam as a motive power, or while riding in or on such conveyance not provided for the transportation of passengers, we do not see that there is room for construction or for doubt as to the validity of the contract.    In *Miller v. Travelers Ins. Co.*, 39 Minn., 548, a similar contract was considered, and it was held that a banker having been killed while attempting to get on a moving train, the company was not liable. The fact that the policy described Snowden's occupation as that of a cattle dealer or broker and shipper, does not conflict with the stipulation referred to.    The policy also stated that he was not a tender or drover.    Had he been insured as a tender or drover with a condition that the company would not be liable for injury sustained while tending or driving cattle, there would be room for doubt; had he been described as a cattle shipper, and had the policy provided that the company would not be liable if he engaged in shipping cattle, the right of the insured would be quite plain; but a man not being a tender or drover may be a cattle dealer, shipper or broker, without riding on conveyances not provided for the transportation of passengers, and without getting upon moving trains.    The very fact that the business of the insured might induce him at times to do such acts, would afford a good reason for the company in its contract to expressly except from the insurance granted injuries received under such circumstances.

As we have said, there was a conflict in the evidence as to whether the train was in motion when Snowden attempted to board it, and all the evidence was to the effect that the car which he boarded was not one provided for the transportation of passengers. The court should have given the instructions requested by the insurance company on these points; and the refusal to do so was not cured by the third instruction given of its own motion. On this phase of the case no question of negligence was involved. The question was not whether Snowden, as a prudent man, was justified under the circumstances in attempting to board the car. No matter how careful he may have been, if the injury was any one against which the company had not insured him, it was not liable. The instruction relating to voluntary exposure to unnecessary danger might also have been given with propriety, although we do not hold that it was prejudiciously erroneous to refuse it, in view of the third instruction. What amounts to a voluntary exposure to unnecessary danger is necessarily largely a question of fact for the determination of the jury under all the circumstances of the case. The issue made by this provision was of a nature akin to issues on questions of negligence.

There are several assignments of error which we have not noticed, and which, in the present condition of the record, we do not deem it necessary to consider. For the errors already referred to the judgment must be reversed.

REVERSED AND REMANDED.