## LAURA L. MAUPIN, Respondent, v. SOUTHERN SURETY COMPANY, Appellant.

Springfield Court of Appeals, February 28, 1920.

1. **INSURANCE: Meaning to be Ascertained from Whole Policy.** A contract of insurance, like other contracts, is to be construed to ascertain the meaning and intent of the parties, which will be reached by a consideration of the whole instrument.

2. ———: **Construed Against Insurer Only when Ambiguous.** The rule that an insurance policy will be strictly construed against the insurer applies only when the language is ambiguous.

3. ———: **Words Deemed to be Used in Same Sense in all Clauses of Same Policy.** Since a particular clause in an insurance policy must be construed with the policy as a whole, words which are used in one sense in other clauses are, as a general rule, deemed to have been used in the same sense in the particular clause; nothing to the contrary appearing.

4. ———: **In an Accident Policy, "Surgeon" Held not to Include Veterinarian.** In a clause of an accident policy authorizing recovery for death of a surgeon or dentist from blood poisoning after performing an operation, where other clauses of the policy excepted surgeons and veterinarians from certain restrictions, the word "surgeon" must be given its popular meaning as one possessing particular knowledge and skill to correct and relieve some unnatural condition of the human body, as it was evidently used in the other clauses, and the clause does not authorize recovery for the death of a veterinarian from blood poisoning resulting from inoculating a hog.

205 App.—6

Maupin v. So. Surety Co.

Appeal from Circuit Court of Cedar County.—*Hon. B. G. Thurman*, Judge.

REVERSED.

*M. D. Aber* for appellant.

(1) The word "surgeon" as used in its plain, ordinary sense does not mean a veterinarian, as ordinarily understood when an average person hears the word, and it is in that sense it must be understood in the contract. Goode v. St. Louis, 113 Mo. 270-1; Richardson v. C. & A. Ry., 62 Mo. App. 1; Lovelace v. T. P. A., 126 Mo. 111; Liggett v. Bank, 233 Mo. 601; 6 R. C. L., page 843, begin, line 12; 13 Corpus Juris, page 531; Johnson County v. Wood, 84 Mo. 489; Good v. Erker, 170 Mo. App. 681; Lumber Co. v. Dent, 151 Mo. App. 614, s. c. 164 App. 442. (2) Contracts of insurance are like other contracts and their terms are to be construed according to the plain ordinary meaning of the terms. Hoover v. Insurance Company, 93 Mo. App. 118, quoting from Imperial Fire Ins. Co. v. Coos. Co., 151 U. S. 463. (a) And, like other contracts, the object is to ascertain the meaning and intention of the parties, which is to be gathered from all parts of the instrument in contemplation of which they are supposed to contract. Renshaw v. Insurance Company, 103 Mo. 595; Renn v. Supreme Lodge, 83 Mo. App. 442; Brewing Co. v. Ins. Co., 63 Mo. App. 666-7, quoting "A contract of insurance differs in no respect from other contracts, as to the rules of interpretation. The object is to ascertain the meaning and intention of the parties, to be gathered from the whole instrument. (Citing Renshaw case above) It should be so construed as to give meaning to all its provisions. (Citing Ins. Co. v. Kieman, 83 Ky. 473.) (b) In construing a contract in numerous sections or parts, no section or clause can be considered alone as controlling; the duty of the court is to harmonize all parts if possible in a reasonable and natural construction. Power Co. v.

Independence, 188 Mo. App. 157. (c) No word or phrase should control the terms of a written contract in opposition to the intent of the parties as disclosed by the entire instrument. Miles v. Bank, 187 Mo. App. 230, 243, quoting from Carney v. Chillicothe W. & Lt. Co., 76 Mo. App. 532, 536; Lumber Co. v. Dent, 151 Mo. App. 618. (d) It is only when after construing all the terms of an insurance contract together, the one with the other, that an ambiguity remains, that the rule of construing strongly against the insurer applies. Banta v. Casualty Co., 134 Mo. App. 222-226; Smith v. Phoenix Co., 181 Mo. App. 455, 458-9; Dunn v. Life & Acc. Co., 197 Mo. App. 457, 471; Mitchell v. Accident Co., 179 Mo. App. 7. (e) And when a clause in a policy of insurance stands with others, its meaning may be gathered from those which precede and follow it. Straus v. Ins. Co., 94 Mo. 182, 189 . (f) And the prime rule for interpretation of contracts is that when the words used are plain and unambiguous, they must be enforced in their natural sense, and that effect must be given to every part of the instrument. Webb v. Ins. Co., 134 Mo. App. 576, 580; Lovelace v. Ass'n., 126 Mo. 104; 6 R. C. L., sec. 231, p. 841.

*Walter L. Chaney, S. J. Caudle* and *W. E. Owen* for respondent.

(1) When a policy is capable of two meanings that meaning which is more favorable to the insured must be applied, even though it was intended otherwise by the insurer. Brown v. Assurance Co., 45 Mo. 221; Hoffman v. Accident Association, 56 Mo. App. 308-9; Cunningham v. Casualty Co., 82 Mo. App. 614; Crotty v. Casualty Co., 163 Mo. App. 636-7; Schmoll v. Insurance Co., 189 S. W. 600, 192 Mo. App. 159; Greenlee v. K. C. Casualty Co., 192 Mo. App. 303; Stout v. Fidelity & Casualty Co., 179 S. W. 993; Stix v. Travelers Ins. Co., 175 Mo. App. 171; Mitchell v. Accident Co., 179 Mo. App. 1; Still v. Connecticut F. Ins. Co., 185 Mo. App. 550; Stark v. John Hancock M. L. Ins. Co., 176 Mo. App. 574. (2) If the

language of a contract is susceptible of different constructions, or there is a dispute as to meaning of terms, the construction put on it by the parties is of great weight and should control.   White v. Nelson Mfg. Co., 53 Mo. App. 337; Rose v. Eclipse Carbonating Co., 60 Mo. App. 28; Williams v. K. C. Belt Ry., 85 Mo. App. 103; St. Joe Depot Co. v. Railroad, 131 Mo. 291; Smith Drug Co. v. Saunders, 70 Mo. App. 221; Wetmore v. Crouch, 150 Mo. 671; City St. Louis v. Leclede Gaslight Co., 155 Mo. 1; Craig v. Seybt, 91 Mo. App. 242; Meyer v. Christopher, 176 Mo. 580; Laing v. Holmes, 93 Mo. App. 231.   (3) A veterinary surgeon is a person lawfully practicing the art of treating and healing injuries of domestic animals.   Lyford v. Martin, 79 Minn. 246, 82 N. W. 479; Cyc. 1546, (note 8); Standard Dictionary; Webster's New International Dictionary.

BRADLEY, J.—This is a suit upon a limited accident insurance policy for $3000.   Plaintiff is the widow of the insured and beneficiary in the policy.   The cause was filed in Johnson county from which the venue was changed to Cedar county and there tried before the court and a jury.   The verdict and judgment were for plaintiff for the face of the policy with interest, and for $500 for attorneys' fees for vexatious refusal to pay.   From this judgment defendant appealed.

The policy was issued on January 12, 1916, for one year, the premium paid, and policy delivered.   The insured was a duly licensed veterinarian and was practicing his profession in Johnson county.   On September 27, 1916, insured was vaccinating some hogs for J. T. Allen, giving them what is called the "double treatment."   After a hog was treated one of its ears was slit so as to distinguish it from those yet untreated.   After administering the treatment to one of the hogs and while endeavoring to slit its ear, insured accidentally cut his finger from which blood poison resulted, and from which he died on October 14, 1916. ' Defendant denies liability.   By the terms of the policy defendant insured Dr. Peter B. Maup-

in, subject to the terms, provisions, conditions and limitations stated, provided the injury sustained was effected exclusively by external, violent and accidental means which should independently of all other causes, immediately continuously and wholly disable insured or be the sole cause of his death or other injuries specified, within thirty days from the date of the event causing such injury, and provided such injury to the insured be received under certain conditions and specifications named. There are twelve of these specifications, and it is conceded that if insured's injury falls under either it is under the twelfth one. By the policy and this specification it is provided that the insurer, the defendant, will be liable: "In the event that a legally qualified physician, surgeon or dentist, while holding an autopsy or performing a surgical operation, or a legally qualified undertaker while embalming or prepairing a body for burial, actually cuts or wounds himself, and by reason of such cutting or wounding and simultaneously therewith be inoculated with poison."

The controversy hinges on the construction of *surgeon* and *surgical operation* as used in the specification quoted. Plaintiff contends that the insured was a *surgeon* and that the operation he was performing when injured was a *surgical operation* as these terms are used in the specification; while defendant on the other hand makes the opposite contention. A contract of insurance does not differ from other contracts respecting rules of interpretation. The object in interpretation and construction is to ascertain the meaning and intention of the parties, and this will be reached by a consideration of the whole instrument. [Brewing Co. v. Union Ins. Co., 63 Mo. App. 663; Renshaw v. Ins. Co., 103 Mo. 595, 15 S. W. 945; Smith v. Ins. Co., 181 Mo. App. 455, 168 S. W. 831.] It is only when the language in the contract is ambiguous that the rule obtains that it will be strictly construed against the insurer. [Smith v. Ins. Co., supra; Banta v. Casualty Co., 134 Mo. App. 222, 113 S. W. 1140; Dunn v. Ins. Co., 197 Mo. App. 457, 196 S. W. 100; Mit-

chell v. Accident Ins. Co., 179 Mo. App. 1, 161 S. W. 362.] The contract must be construed as a whole and when a clause in the policy stands with others its sense may be gathered from those clauses which precede and those which follow. [Strance v. Ins. Co., 94 Mo. 182, 6 S. W. 698.] When words are used in one sense in one part of a contract, and such words are again used in the same contract they are as a general rule deemed to have been used in the same sense as in the first instance, nothing to the contrary appearing. [13 C. J., sec. 491, p. 532.] Of the construction of contracts in general no one challenges the rule that all parts must be considered together if possible. This is the general rule.

With these statements of the law as we find it, it is pertinent to consider other specifications in the policy sued on in the instant case as they throw light on the construction which we think was evidently intended by the word *surgeon* and the words *surgical operation* as used in specification twelve. Specification eight made the defendant liable to the insured for accidental injury: "While riding within a conveyance drawn by horse power, provided that the insured shall not be a hired driver thereof, nor be riding or driving in or upon any conveyance used for any business purpose or any work whatsoever (but this exception shall not apply to any legally qualified *physician, surgeon* or *veterinarian* (italics ours) then employed in the practice of his or her profession, nor any commercial traveler selling goods from sample for future delivery only) in consequence of a collision or other accident to the conveyance in which the insured is so riding." Specification eleven makes defendant liable for accidental injury to insured: "While riding upon a motor bicycle, not being used for any business purpose but this exemption shall not apply to any legally qualified *physician, surgeon,* or *veterinarian* (italics ours) then employed in the practice of his or her profession, nor any commercial traveler selling goods from sample for future delivery only), and in consequence of a collision

with any other conveyance except another motor bicycle."

In order to sustain recovery upon the policy before us we must say that the word *surgeon* as used in specification twelve includes a veterinarian, and that the act of administering the treatment to the hog, and the slitting of the ear was a *surgical operation* as that term is used. Bearing in mind the law as we find it relative to the consideration that should be given to clauses which precede and which follow and reerting to specifications eight and eleven, it would appear that the word *surgeon* in the policy was not intended to cover and embrace a veterinarian. It is clear that in specifications eight and eleven veterinarian is not used as synonymous with physician and surgeon. In these two specifications separate and distinct exceptions are made to the limitations therein named. In specification twelve distinct classes are covered, the physician, surgeon and dentist. Following the literal context in each of the three specifications and agreeing for the moment that veterinarian is synonymous with surgeon in eight and eleven, and then applying the same reason to twelve we could with as much reason say that the word dentist is also synonymous with surgeon as therein used. Giving the language this construction a dentist could recover under either of the three specifications whether named or not, notwithstanding the policy is a limited one.

The best construction, and if the best it must be the correct one, is that which is made by viewing the subject of the contract as the mass of mankind would view it; for it may be safely assumed that such was the aspect in which the parties themselves viewed it. "Accordingly it is a familiar rule of constant application that courts give effect to all written instruments according to the ordinary popular meaning of the terms employed, when nothing appears to show that they were used in a different sense, and no unreasonable or absurd consequences will result from doing so. If a particular use of a word becomes common that use must be taken into con-

sideration in construing a contract regardless of whether its meaning can be found in any lexicon. Stated differently the rule may be said to be that the nontechnical terms of every written instrument are to be understood in their plain, ordinary and popular sense, unless they have generally, in respect to the subject-matter, as by the knowledge of trade or the like, acquired a peculiar sense distinct from the popular sense of the same words, or unless the context evidently points out that in the particular instance, and in order to effectuate the immediate intention of the parties it should be understood in some other peculiar sense." [6 R. C. L. 843; Webb v. Ins. Co., 134 Mo. App. 576, 115 S. W. 481; Lovelace v. Protective Ass'n., 126 Mo. 104, 28 S. W. 877.]

The word *surgeon,* unaqualified, in the mind of the ordinary individual means one possessed of such knowledge of the human body, and such other knowledge as the laws of our land require, and possessed of such skill in the use of instruments that he may be expected with reason to correct or relieve some unnatural condition of the human body. We do not think that the "mass of mankind" would connect the idea of a veterinarian with the word surgeon as that word is generally used. We would be doing violence to what we think is the only reasonable construction of the contract of insurance when all the specifications are considered together to say that the word surgeon as used in specification twelve is broad enough to include a veterinarian. Not only would we be doing violence to the plain terms of the policy, but we would certainly be out of line with all the adjudicated cases laying down general rules of construction and interpretation. In view of our conclusion to be given the word surgeon as used in specification twelve, it is unnecessary to consider other questions raised. The judgment below is reversed. *Sturgis, P. J.,* and *Farrington, J.,* concur.